# PINSKY & SKANDALIS, P.C.
*Attorneys and Counselors at Law*

6723 TOWPATH ROAD, SUITE 101
EAST SYRACUSE, NEW YORK 13057
(315) 446-2384
(315) 446-3016 (Facsimile)

January 17, 2025

<u>Via ECF - electronic filing only</u>
Hon. Mae A. D'Agostino
United States District Court for the Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, Courtroom 5
Albany, NY 12207

      Re:    *Ceceleta Maitland, M.D. v. The State University of New York System, et al.*
             Case No. 5:21-cv-00475-MAD-TWD

Dear Judge D'Agostino,

    I represent Defendant University Radiology Associates, LLP ("URA") in the above-captioned matter. Pursuant to Your Honor's "Individual Rules and Practices," please accept this letter as URA's pre-motion letter requesting a conference with the Court to set a briefing schedule, and to discuss any other related matters with Your Honor. URA seeks leave to file a motion for summary judgment on all causes of action asserted by Plaintiff against URA.

    Plaintiff, Ceceleta Maitland, M.D., a radiologist, started working for Upstate Medical Center ("Upstate") in its radiology department comprised of a limited liability partnership of physicians, namely URA, on February 1, 2019. Plaintiff filed suit against URA, Upstate, and Dr. David Feiglin (URA's former managing partner and Upstate's former Radiology Department Chair), seeking damages over $1,000,000, alleging discrimination based upon her race and sex, hostile work environment, retaliation, and aiding and abetting discrimination under both Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law.

    Pursuant to the applicable standards, URA intends to show that there is no genuine issue as to any material fact and an absence of evidence for Plaintiff to support her case. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986), and Fed. R. Civ. P. 56(e). Despite Plaintiff's

allegations of a myriad of disparate circumstances of alleged discrimination or retaliation, Plaintiff has failed to develop sufficient evidence to support her claims. Now that discovery is closed, a dispositive motion will lead to a faster and more economical resolution than trial.

In regards to the discrimination claims, URA intends to show that Dr. Maitland neither satisfies the threshold requirements for a *prima facie* case, nor has she suffered an "adverse employment action" as her termination was the result of her partnership agreement with URA or faced circumstances that "give rise to an inference of discrimination." *Weinstock v. Columbia Univ.,* 224 F.3d 33 (2d Cir., 2000). Further, URA had a "legitimate, non-discriminatory reason" for its actions. *Kirkland v. Cablevision Sys.,* 760 F.3d 223, 225 (2d Cir. 2014). As URA will detail in its motion, throughout the brief tenure of Dr. Maitland's work with Upstate and URA (only approximately 19 months), the Defendants received and addressed numerous complaints related to Plaintiff. Such complaints included suboptimal patient care, absence and unavailability, complaints from referring physicians, defensive/unprofessional demeanor, inaccuracy of reports, poor teaching and improper interactions with residents, workflow concerns, not fulfilling administrative duties, and professionalism issues. Given the above, Plaintiff will be unable to show that Defendants' actions were merely "pretext," namely that the "reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

In regards to the retaliation claims, URA intends to show in its motion that Plaintiff engaged in a "protected activity" of pursuing her claims with Upstate's Office Diversity and Inclusion ("ODI") and then the New York State Division of Human Rights ("DHR"), but there is no "causal connection" between any alleged actions taken against Plaintiff and the protected activity. *Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 205-6 (2d Cir. 2006). As a result of the aforementioned complaints and concerns, URA initiated a quality assurance ("QA")

review of Plaintiff's work on May 1, 2020. The disconcerting results of this internal and external QA process led to the involvement of Upstate's Medical Executive Committee, who secured an additional external review of Dr. Maitland's work. These processes eventually led the MEC to place Dr. Maitland on probation for professionalism issues and suspend her clinical privileges on November 17, 2020, with a requirement that she complete retraining and assessment (which she never started). URA was neither a part of nor a participant in the votes or meetings of the MEC.

As URA will detail in its motion, all of the actions taken by Defendants that eventually led to Plainiff's termination logically flowed from a dispassionate review of Plaintiff's work rather than any retaliatory motive. *Id.* URA did not inhibit or act in retaliation of Plaintiff's ODI complaint filed on May 18, 2020 (that concluded Plaintiff's claims were "unsubstantiated") or her DHR complaint against Upstate filed on October 11, 2020 (which Plaintiff voluntarily withdrew).

Similarly, in regards to the hostile work environment claims, URA intends to detail that Plaintiff's allegations fail to meet the applicable standards, specifically the objective standard required as part of both Title VII and NYHRL claims as the alleged actions were neither pervasive nor severe enough. See e.g. *Saraceni v. Retting,* 726 F. Supp. 3d 101, 121 (N.D.N.Y. 2024).

Given the above, URA respectfully requests the opportunity for a court conference (telephonically if possible) with Your Honor and all counsel to discuss filing deadlines and briefing schedules. URA does not object to Upstate's anticipated request to file a separate dispositive motion from URA, but defense counsel intend to coordinate to create a common set of exhibits for purposes of judicial economy. Further, a court conference will be helpful in determining whether the briefing schedule should accommodate a cross-motion from Plaintiff. Also, URA would like to address with the Court how the parties can most efficiently handle various documents marked as "highly confidential" pursuant to a protective order but may be needed for the motions.

4 | P a g e

Thank you for your attention and consideration.

Very truly yours,

*/s/ Todd J. Pinsky*

Todd J. Pinsky, Esq.
tpinsky@pinskyskandalis.com

cc:     All Counsel of Record via CM/ECF